619 So.2d 487 (1993)
Eddie Purcell WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 92-1709.
District Court of Appeal of Florida, First District.
June 11, 1993.
*488 Louis O. Frost, Jr., Public Defender, and James T. Miller, Asst. Public Defender, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., and Bradley R. Bischoff, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Eddie Purcell Williams was convicted of two counts of armed robbery with a firearm and two counts of attempted armed robbery with a firearm. He appeals his convictions and his sentences as a habitual violent felony offender, raising three issues. We conclude that the trial court erred in (1) denying Appellant the right to peremptorily challenge two black jurors and (2) admitting as collateral crime evidence testimony about an unrelated robbery that took place four years earlier. Accordingly, we reverse the convictions and remand for a new trial. We find it unnecessary to reach the sentencing issue.

I.
Williams (who is black) first contends that the trial court erred in denying his peremptory challenges to three black female potential jurors on the basis of a Neil violation.[1] He argues that the trial court improperly directed his counsel, sua sponte without any objection being made by the state, to state racially neutral reasons for his challenge of these jurors. He further argues that the court applied the wrong legal test in making this ruling because the peremptory challenges were denied for reasons applicable only to challenges for cause. The state argues only that Appellant did not make the required contemporaneous objections before the trial court, and thus has not properly preserved this point for appellate review. This issue arose in the following manner.
*489 In accordance with the customary practice in Duval County, the jury in this case was selected on Monday, April 20, 1992, even though the trial was not to commence until later that week. After the potential jurors had been examined on voir dire, the parties announced several peremptory challenges, and the defense made Neil objections to the state's challenge of two black jurors. Ruling on these objections, the trial judge, without any objection by the state, also required defense counsel to explain the reasons for the peremptory challenge of two black jurors, stating, "I don't know if there's a presumption about numbers or not, but I'm going to require both the state and defendant to tell me why they excused black jurors because it seems to me what's good for the goose is good for the gander." The trial court ruled upon the state's challenges, upholding a challenge based on the juror's prior criminal record and denying two challenges based on (1) a belief by a juror that a police officer may lie, and (2) a prior criminal traffic record.
The trial court then asked defense counsel to state the reasons for striking the two black jurors. During voir dire juror Adamson described how she had been the victim of an armed robbery. When asked by defense counsel whether, in view of this experience, she might feel that she could not judge the case fairly, she responded in the negative. Counsel stated that he excused juror Adamson because she had been the victim of a robbery, the offense for which Appellant was on trial, and he felt that she would likely identify with the victims in this case. The court commented, without hearing any argument from the state, that:
THE COURT: She said she wouldn't. I mean I'm not to presume she's lying, I hope.

* * *
MR. HIGBEE [defense attorney]: But I think she would sympathize with them [the victims].
THE COURT: Well, but for the fact that you asked her that it may be valid, but you asked her specifically, I see no reason to presume that she is lying. She is an administrator at Blue Cross-Blue Shield. Her answers to other questions were seemingly to the Court intelligent. She presents an attractive appearance, somewhat educated. There's no reason to think that  there's no basis for me to even remotely presume that she is lying if she can set aside any feelings that she might have so I'm going to deny that challenge for cause also as not being a valid reason. Not for cause, but deny the defendant's use of a peremptory to do that.

(Emphasis added.) The court then asked defense counsel about juror Hannon. During voir dire, this juror had disclosed to defense counsel that she had been the victim of a mugging in 1988, but she indicated that this experience would not preclude her from being a fair juror in this case. Counsel stated that he had excused Ms. Hannon for the same reason as Ms. Adamson  that he did not want victims of robberies or muggings sitting on the jury in this robbery case. The court then asked for the state's position with respect to victims of robberies sitting on robbery juries, and the prosecutor responded that Ms. Hannon did not give any indication that she could not be fair or impartial. The court then ruled:
I don't think that that's a legally sufficient reason to excuse a juror, even with a peremptory, just the fact that they have been victims of this particular crime or any other crime, unless there's some showing that they harbor some grudge against people of that category, there has to be a greater showing than the mere fact that they were victims, as far as I know.

(Emphasis added.)
After denying the defense's challenge to a third juror, the court asked whether the panel was acceptable, and the defense attorney responded, "Other than the strikes that I attempted to use and you disallowed, Judge, they're acceptable." The parties immediately exercised strikes of other jurors to reduce the panel to six and indicated that the panel was acceptable to them. On the first day of trial later that week, before the jury was sworn, defense counsel "move[d] for a mistrial to preserve any *490 issues" because "I know that we have not started trial but rather than do it after the jury comes out, I would ask that you grant a mistrial on the fact that you denied my peremptory strikes." After the court had denied the motion, the prosecutor argued that the motion was late because the defense attorney previously had no opposition to the seating of the jurors when striking the panel, and they were no longer able to bring in a new panel. The court stated that it was not interested in hearing arguments on any motions at that time. Defense counsel did not again raise the denial of the peremptory challenges until the motion for new trial was filed after the jury verdict.

A.
We reject the state's contention that Appellant failed to preserve this issue for appellate review. The supreme court, in holding that an objection based on a Neil violation was not properly preserved for appellate review in Joiner v. State, 618 So.2d 174 (Fla. 1993), explained the rationale of its ruling:
We held in Jefferson [v. State, 595 So.2d 38 (Fla. 1992)] that striking the entire jury panel is not the only remedy for a Neil violation. There we held that seating the improperly challenged juror is a proper remedy for a Neil violation. We agree with Joiner that a new panel may exacerbate rather than alleviate the constitutional violation Neil is designed to remedy. We therefore disapprove the lower court's suggestion that the preferred procedure reserving the issue is to move to strike the jury panel... .
We do not agree with Joiner, however, that he preserved the Neil issue for review. He affirmatively accepted the jury immediately prior to its being sworn without reservation of his earlier made objection. We agree with the district court that counsel's action in accepting the jury led to a reasonable assumption that he had abandoned, for whatever reason, his earlier objection. It is reasonable to conclude that events occurring subsequent to his objection caused him to be satisfied with the jury about to be sworn. We therefore approve the district court to the extent that the court held that Joiner waived his Neil objection when he accepted the jury. Had Joiner renewed his objection or accepted the jury subject to his earlier Neil objection, we would rule otherwise. Such action would have apprised the trial judge that Joiner still believed reversible error had occurred. At that point the trial judge could have exercised discretion to either recall the challenged juror for service on the panel, strike the entire panel and begin anew, or stand by the earlier ruling.

618 So.2d at 176 (emphasis added). Unlike Joiner, in the instant case defense counsel first indicated during jury selection on Monday that the jury panel was acceptable "other than the strikes" disallowed by the court. Although defense counsel stated two pages later in the transcript, after further strikes had reduced the panel to six, that the panel was acceptable to the defendant, nevertheless, before the jury was sworn on the day the trial began, defense counsel moved for a mistrial to preserve any issue regarding the trial court's denial of his peremptory challenges. The law is well settled that a trial judge has no authority to infringe upon a defendant's right to challenge any juror, either peremptorily or for cause, prior to the time the jury is sworn, and that a denial of this right is per se reversible error. Gilliam v. State, 514 So.2d 1098 (Fla. 1987); Fla. R.Crim.P. 3.310 This has been the rule of law in this state for more than a hundred years. Mann v. State, 23 Fla. 610, 3 So. 207 (1887); O'Connor v. State, 9 Fla. 216 (1860). We conclude that Appellant's motion for mistrial, having been made before the jury was sworn, was legally sufficient under the supreme court's rationale in Joiner to timely apprise the trial judge that Appellant continued to believe that reversible error had occurred in the denial of his peremptory challenges, so that the trial court could exercise its discretion either to correct the error or let its prior ruling stand. Having so raised his objection, Appellant *491 preserved this issue for review on this appeal.

B.
Addressing the merits of this point, we discuss only the denial of the peremptory challenges of jurors Adamson and Hannon, finding it unnecessary to reach any issue raised as to the third juror Garner. We conclude it was clear error to deny these two peremptory challenges, and the state's brief does not argue otherwise. A peremptory challenge of a prospective juror on grounds that the juror has been the victim of robbery or mugging is a race-neutral reason in the trial of an armed robbery case, notwithstanding the prospective juror's statement of belief that he or she can fairly judge the case. See Isom v. State, 601 So.2d 299 (Fla. 3d DCA 1992) (trial court did not abuse its discretion in determining that the state's reason for exercising a peremptory challenge against a prospective black juror was race-neutral where the prosecutor noted that the juror had been a victim of an armed robbery and did not report the incident to the police because he did not believe that he would get his property back, even though he had seen the robber and believed he could assist the police in making an identification); Adams v. State, 559 So.2d 1293 (Fla. 3d DCA 1990) (defendant failed to demonstrate that there was a strong likelihood that a prospective black juror was challenged solely on the basis of race where voir dire examination of the juror indicated that someone had broken into her house a few years previously and her son had been accused of assaulting a family; these events could affect a prospective juror's ability to make an impartial decision).
Moreover, the trial court erred in requiring defense counsel to show good cause for challenging these jurors rather than determining whether these jurors were being excused solely for reasons of their race, which is the only basis for finding a Neil violation.

II.
Appellant next contends that the trial court erred in admitting, as similar fact evidence of a collateral crime pursuant to section 90.404(2), Florida Statutes (1991), both testimony relating to the robbery of an elderly couple that occurred some four years previously and documents showing that Appellant had pleaded guilty to that offense. That offense occurred about 5:30 p.m. as the victims walked from a car parked on the street to their house. Their assailants were several black men who had just gotten out of a car parked on the street. One of the assailants pointed a gun at the woman and took her purse. Appellant pleaded guilty to a charge of robbery arising out of this episode, and the court received, over a contemporaneous objection by the defense, documentary proof of his plea to and conviction of this robbery. Two witnesses to that robbery testified in the instant trial but were unable to identify the assailants, and no witness described what Appellant did on that occasion.
The facts in the instant case were, at best, generally similar. Several young black women were in a car stopped on the side of a street at about 11:00 p.m., and the driver left her door open when she got out of the car to talk to a person on the street. Several men, including Appellant, were in a car following the women, honked their horn, and pulled up beside the women's car. Three young black men emerged from the car. One of them wore a camouflage shirt and ran after the woman driver. The second man approached the passenger side of the women's car while the third man approached the driver's side. One man banged on the window and ordered a woman inside to open the door. When she did, one of the men pointed a gun at her head and told her to give him everything. She responded by taking off her jewelry. The other man put his head in an open window, pointed a gun at another passenger's head, and asked if they had anything else. When the men got nothing else, they left. This robbery occurred in an area of town far removed from the area where the prior offense was committed.
Appellant contends that these incidents lacked sufficient similarity and uniqueness *492 to allow the admission of any evidence of the earlier offense under section 90.404(2). The trial court admitted the evidence for the purpose of proving "identity and absence of mistake or accident."

A.
The state's principal argument under this point asserts appellant's failure to make a timely and adequate objection at trial and preserve this issue for appellate review. We summarily reject this contention. Appellant objected on the grounds asserted on this appeal when arguing the motion in limine to exclude this Williams rule evidence just before the trial began. When the state offered testimony on the prior robbery, an unreported side bar conference was held after which the court instructed the jury on the purpose of similar fact or collateral crime evidence. After two witnesses testified, defense counsel renewed his objection to their testimony and moved to strike the similar fact evidence. Defense counsel then made a specific objection to the admissibility of the documents showing that Appellant had pleaded guilty to the prior offense based on lack of similarity. This objection was made before the documents were received. At one point during these discussions the trial court stated to defense counsel that, "I know you're objecting to the whole Williams Rule line so that's no problem." We decline to rule that the issue was not preserved for appellate review despite the trial court's acknowledgment that the defendant's objection had been made and noted by the court; to do so would be plainly contrary to the purpose underlying the requirement for contemporaneous objections before the trial court, i.e., to fully advise the trial court of the grounds of the objection. See Thomas v. State, 599 So.2d 158, 158 n. 1 (Fla. 1st DCA), rev. denied, 604 So.2d 488 (Fla. 1982).

B.
The state's entire argument in support of the admissibility of this evidence follows:
Even so, the evidence shows that the two crimes were sufficiently similar. In both instances, appellant was riding in a car with other black males. The vehicle Appellant was in would follow another car until it stopped. In the prior incident, when the victims exited their car Appellant and his companions jumped out of their car and robbed the victims of their valuables at gunpoint. In the instant incident, the victims' car stopped but only one victim exited the car whereupon Appellant and his companions jumped out of their car and robbed the victims of their valuables at gunpoint. The Appellant's particular modus operandi of following victim's cars and accosting them when they stop them is unmistakable.
The only difference between the incidents are attributable to the differences of time and opportunity: the crimes were carried out in a distinctive fashion. The fact that the victims may have been of different races, that the victims had different sorts of valuables, that not all the victims exited their car in one instance, or that Appellant was wearing different clothes several years later, are insignificant differences for Williams rule purposes.
(Appellee's Answer Brief, p. 15).
Although it is readily apparent that these two episodes share only general similarities present in numerous other street robberies, the trial court admitted this evidence as proof of identity and absence of mistake or accident. But there are no identifiable points of similarity pervading both robberies that are so unique or unusual that they point to Appellant as the perpetrator of both crimes and establish, independently of the victim's identification of him, that he committed the robbery charged. In reversing the admission of collateral crime evidence in a prosecution for larceny, the court in Green v. State, 427 So.2d 1036 (Fla. 3d DCA 1983), emphasized:
The similarities between the transaction which is subject of the prosecution and the other similar crime is that both involve transactions between a lawyer and a client whereby the latter entrusts the *493 former with funds, an admitted general similarity. But the similar crimes test is a stringent one: there must be "something so unique or particularly unusual about the perpetrator or his modus operandi that it would tend to establish independently of an identification of him by the collateral crime victim, that he committed the crime charged." Sias v. State, 416 So.2d 1213 (Fla. 3d DCA 1982), citing Beasley v. State, 305 So.2d 285 (Fla. 3d DCA 1974); Duncan v. State, 291 So.2d 241 (Fla. 2d DCA 1974); Marion v. State, 287 So.2d 419 (Fla. 4th DCA 1974). There are no features of the prior transactions which are so unique as to be, when compared with the present offense, a "finger-print type" characteristic.
427 So.2d at 1038. See also Drake v. State, 400 So.2d 1217 (Fla. 1981); Thomas v. State, 599 So.2d 158 (Fla. 1st DCA), rev. denied, 604 So.2d 488 (Fla. 1992). Moreover, although the trial court also ruled that the similar crime evidence was admitted to prove absence of mistake or accident, there was no material issue of fact relating to either of these facts. Yet, similar crime evidence is admissible under section 90.404(2) only if it relates to a material fact in issue. The similar crime evidence admitted in this case proved only that Appellant had a bad character or propensity to commit robbery, purposes expressly prohibited by section 90.404(2).
In Czubak v. State, 570 So.2d 925 (Fla. 1990), the supreme court observed:
Erroneous admission of collateral crimes evidence is presumptively harmful. Castro [v. State], 547 So.2d 111 at 116 [(Fla. 1989)]; Straight v. State, 397 So.2d 903, 908 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). Error is harmless only "if it can be said beyond a reasonable doubt that the verdict could not have been affected by the error." Ciccarelli v. State, 531 So.2d 129, 132 (Fla. 1988).
570 So.2d at 928. The state's brief makes no harmless error argument on this point, and we cannot say beyond a reasonable doubt that the verdict could not have been affected by the erroneous admission of this evidence.
For the reasons stated, we reverse the convictions and remand for a new trial.
REVERSED AND REMANDED.
ERVIN and WEBSTER, JJ., concur.
NOTES
[1] State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986).