750 So.2d 22 (1999)
Tivan JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 86,134.
Supreme Court of Florida.
October 14, 1999.
Rehearing Denied January 12, 2000.
*23 Bennett H. Brummer, Public Defender, and Christina A. Spaulding and Brent E. Newton, Assistant Public Defenders, Eleventh Judicial Circuit, Miami, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Randall Sutton, Assistant Attorney General, Miami, Florida, for Appellee.
PER CURIAM.
We have on appeal the judgment of the trial court adjudicating Tivan Johnson guilty of first-degree murder and other crimes and sentencing him to death. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. We affirm Johnson's convictions but vacate his death sentence and remand for a new penalty phase proceeding before a jury based upon the absence of Johnson and his counsel during part of the penalty phase proceedings.
Tivan Johnson and codefendant Albert Cooper were charged with the first-degree murder for the May 25, 1991, killing of pawnshop owner Charles Barker. Both men were also charged with the armed burglary of Barker's pawnshop, the armed robbery of Barker, and the commission of a felony with a firearm.
The evidence presented at trial revealed the following facts: Cooper and Johnson planned the robbery of Barker's pawnshop by visiting the location prior to the robbery. They chose this location because there was no security video camera and only one person worked in the pawnshop. Cooper and Johnson arrived at the pawn-shop *24 shortly before closing time on May 25; they were driving a silver Ford Probe belonging to Johnson's wife at the time, Renee Carey. Cooper and Johnson backed the car into a parking spot near the entrance of the pawnshop in order to make it easier to load the items they planned to take and to conceal the car's license plate. Cooper carried a .380 mm automatic gun and Johnson was armed with a snub-nose .38 mm revolver. Johnson talked to the owner about buying a rifle while two other customers were present. After the customers left, Cooper and Johnson pulled out their weapons and began shooting at Barker. Cooper fired first, but Johnson also shot Barker. In all, they shot Barker twelve times, including a fatal gunshot wound to the heart and numerous wounds to the abdomen. After Johnson emptied his gun, he loaded one more cartridge and shot at Barker's head as he lay on the floor.
Cooper and Johnson took an undetermined amount of cash and a number of weapons from the pawnshop, including a 12-gauge Mossberg shotgun that was recovered from a pawnshop in South Dade County. Johnson told the police where they had pawned the shotgun. The fingerprint on the police report form for the sale of the Mossberg shotgun was identified as Cooper's. Cooper's and Johnson's prints were also found on papers recovered from the counter top at Barker's pawnshop. A.38 mm gun, which was recovered from the back of the U-Haul vehicle occupied by Cooper and his girlfriend, was identified as one of the weapons used in Barker's shooting.
Cooper and Johnson were arrested separately on June 14, 1991, and taken to the Metropolitan Dade County Police Headquarters for questioning about another incident. Johnson was with his wife in the Ford Probe when he was arrested. Cooper and his girlfriend Admonia Blount were stopped in a U-Haul vehicle containing Cooper's and Johnson's possessions. During questioning of Blount, the police learned that Cooper and Johnson had robbed and shot a pawnshop owner. Blount testified at trial that the pair had planned the pawnshop crime in advance and stated their intent to "splat" the owner.[1]
When confronted by the police with the information about the pawnshop robbery and murder, both Cooper and Johnson waived their rights and confessed their involvement in Barker's robbery and murder. At trial, one of the May 25 pawnshop customers also identified Cooper as one of the men in the shop just before closing time.
After the joint trial, the jury found both Johnson and Cooper guilty of all four counts. After a joint penalty phase, the jury recommended death for both defendants by a vote of eight to four.[2]
The court found that three aggravating circumstances applied to Johnson: he was previously convicted of a capital or violent felony; the murder was committed during a robbery and was committed for pecuniary gain (which the court merged into one factor); and the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP). See § 921.141(5)(b), (d), (f), (i), Fla. Stat. (Supp.1990). The court found the statutory mitigating circumstance of extreme mental or emotional disturbance, see § 921.141(6)(b), Fla. Stat. *25 (Supp.1990), and a number of nonstatutory mitigating circumstances, including that Johnson had experienced a life-threatening case of meningitis as an infant; his siblings had treated him badly; he suffered from learning disabilities; he was well-behaved as a child; he was devoted to his mother; he had limited contact with his father; and he had been involved in the community through his participation in the Boy Scouts. The court concluded that the aggravating circumstances outweighed the mitigating circumstances and followed the jury's recommendation by imposing a death sentence.
Based upon the fact that the capital felony in this case and Johnson's conviction for another first-degree murder that occurred after this case could not be scored, the court departed from the sentencing guidelines and sentenced Johnson to two consecutive life sentences for the armed burglary and armed robbery convictions. The court also imposed two three-year minimum mandatory sentences based upon the use of a firearm in each offense. The State announced a nolle prosequi on count four (committing a felony while possessing a firearm) and the trial court vacated judgment on that count.
Johnson raises eleven issues on appeal, claiming that the trial court erred in the following: (1) denying Johnson's motion to suppress his custodial confessions; (2) denying his peremptory challenge of Juror Darias; (3) permitting the prosecutor to inform the jurors that Johnson was in custody on an unrelated matter at the time that he confessed his involvement in this incident; (4) allowing the jurors to view Johnson in shackles and handcuffs; (5) failing to submit special verdict forms to the jury regarding the alternate theories of felony murder and premeditated murder; (6) the absence of Johnson's counsel during a critical stage of the penalty phase proceeding; (7) denying Johnson's motion to sever the penalty phase proceedings; (8) Johnson's absence during a critical stage of the penalty phase without a knowing and intelligent waiver of his right to be present: (9) the death sentence is disproportionate in this case; (10) judge's extemporaneous comments to the victims' family prior to sentencing; and (11) the death penalty is unconstitutional.

Guilt Phase
Johnson raises five issues relating to the guilt phase proceedings, three of which we have already considered and found without merit in Cooper's direct appeal (issues one, three, and four). See Cooper v. State, 739 So.2d 82, 87 (Fla.1999). In issue one, Johnson claims that his confessions to both the instant case and another robbery and murder should have been suppressed because the Metropolitan Dade County Miranda[3] warning form did not adequately apprise Johnson of his right to consult with counsel prior to questioning as well as during questioning. As we stated in Cooper, the language of the warning form "tracks the language of Miranda." Id. Thus, Johnson's confessions were properly admitted by the trial court.[4]
Johnson's third issue is also identical to an issue raised in Cooper's direct appeal to this Court and found to be without merit: informing the jurors that Johnson was in custody on an unrelated matter at the time that he confessed his involvement in the instant crimes. The record shows, however, that during the guilt phase proceedings the jurors were never *26 told that the defendants were under arrest or suspects in the unrelated matter nor informed about the nature of that other investigation, but were simply told that the defendants had been "interviewed" along with six or seven "other witnesses." See Cooper, 739 So.2d at 87. Because this evidence was relevant to the jury's determination of whether Johnson's confession was voluntary, the court properly admitted this testimony and we find no error. See id.
Issue four involves an issue also raised in Cooper's direct appeal: the jury's observation of the defendants in handcuffs and chains as they were brought into the courtroom. Johnson was not forced to stand trial in handcuffs and chains. The jury's observation occurred as the defendants were escorted past the jury in a hallway outside the courtroom. Consistent with our ruling in Cooper, we find that the jury's inadvertent view of Johnson in handcuffs does not warrant reversal of Johnson's convictions or sentences. See Cooper, 739 So.2d at 85 n. 8.
Johnson raises two other guilt phase issues. Issue two involves the court's denial of Johnson's peremptory challenge to a juror during voir dire. When Johnson's attorney attempted to peremptorily strike Juror Darias, the State challenged the strike, noting that the juror "is a female and may be Hispanic." When asked by the court to explain his reasons for striking Darias, Johnson's attorney offered the following explanation:
She has been on a prior civil jury. She has been the victim of a car theft. She hasI got the impression that she had a problem withfrom her responses with a presumption of innocence, as well as this is my impression. I can't necessarily give any more than that, and I tend to think that she would be too intelligent for the case.
When the court denied the peremptory challenge, Johnson's attorney expressed his disagreement with the court's ruling. Counsel further stated that he would "probably try" to strike Darias again before the conclusion of voir dire, that he "may come up with a better reason" for striking her, and that he "may ask her some more questions." However, counsel did not pursue his challenge of Darias and she was ultimately seated on the jury without objection by Johnson. Under these circumstances, we conclude that Johnson waived any objection to the court's disallowance of his peremptory challenge. See Joiner v. State, 618 So.2d 174, 176 (Fla. 1993) (holding that defendant waived any objection to a peremptory strike against a minority juror by affirmatively accepting jury immediately prior to its being sworn without reserving earlier-made objection); Schummer v. State, 654 So.2d 1215 (Fla. 1st DCA 1995) (stating that to preserve error relating to disallowance of peremptory challenge under State v. Neil, 457 So.2d 481 (Fla.1984), defendant must make objection to jury panel prior to acceptance of jury). As this Court explained in Joiner, "counsel's action in accepting the jury led to a reasonable assumption that he had abandoned, for whatever reason, his earlier objection." 618 So.2d at 176. In the instant case, a new venire panel was questioned between the denial of Johnson's challenge of Darias and the swearing of the jury. The questioning of the new panel spans almost 200 pages of transcript. Without some indication by Johnson that he renewed his earlier challenge or that he accepted the jury subject to the earlier challenge, "[i]t is reasonable to conclude that events occurring subsequent to his [challenge] caused him to be satisfied with the jury about to be sworn." Joiner, 618 So.2d at 176; see also Williams v. State, 619 So.2d 487, 490 (Fla. 1st DCA 1993) (trial counsel preserved for appeal issue of denial of peremptory challenges by indicating to court that jury panel was acceptable other than the strikes disallowed by the court).
In issue five, Johnson claims that the court erred in failing to submit special verdict forms to the jury regarding the *27 alternate theories of felony first-degree murder and premeditated first-degree murder. We have repeatedly held that a special verdict form demonstrating which theory the jury based its verdict on is not required. See, e.g., Bedford v. State, 589 So.2d 245, 252 (Fla.1991); Young v. State, 579 So.2d 721, 724 (Fla.1991); Buford v. State, 492 So.2d 355 (Fla.1986). Moreover, in this case there is evidence to support the jury's verdict of first-degree murder on either theory. Johnson was engaged in a robbery at the time Barker was killed. Section 782.04(1)(a)2.d., Florida Statutes (Supp.1990), provides that "[t]he unlawful killing of a human being [w]hen committed by a person engaged in the perpetration of, or in the attempt to perpetrate any [r]obbery is murder in the first degree and constitutes a capital felony." Cooper's girlfriend Blount also testified that she overheard Cooper and Johnson discuss their plans to rob the pawnshop and shoot the owner prior to the incident. According to Blount, Cooper told Johnson that he would hold the owner and Johnson should shoot him. Cooper also stated his intent to "splat" the owner and Johnson voiced no opposition. Johnson and Cooper were armed when they entered Barker's pawnshop. This evidence supports Johnson's conviction for premeditated first-degree murder. Thus, we find no merit to issue five.
Although not raised by Johnson, we find sufficient evidence to support his convictions for first-degree murder, armed burglary, and armed robbery. Finding no reversible error as to the guilt phase of Johnson's trial, we affirm his convictions.

Penalty Phase
Johnson raises five penalty phase issues, but we find issue eight to be dispositive in this case. We agree with Johnson that his absence during a critical stage of the penalty phase without a knowing and intelligent waiver of his right to be present resulted in an unfair penalty phase proceeding.
A defendant "has a constitutional right to be present at all crucial stages of his trial where his absence might frustrate the fairness of the proceedings." Garcia v. State, 492 So.2d 360, 363 (Fla.1986). As provided by Florida Rule of Criminal Procedure 3.180(a)(5), "[i]n all prosecutions for crime the defendant shall be present ... at all proceedings before the court when the jury is present." The State contends that Johnson was not absent for any of the proceedings of his penalty phase proceeding because Cooper's presentation of mitigating evidence was not a critical stage of Johnson's trial. We find this argument unpersuasive in light of the nature of the penalty phase proceedings in this case. One jury heard the evidence as to both Cooper and Johnson and made sentencing recommendations as to both defendants. The State presented evidence and testimony relating to the aggravating circumstances as to both defendants and defense counsel for both were permitted to cross-examine these witnesses. However, when Cooper presented his evidence and witnesses in mitigation, Johnson and his counsel were excused from the courtroom. Cooper's mitigating evidence included claims that Johnson psychologically manipulated and dominated Cooper and that Johnson had lured Cooper into drug use. One of Johnson's attorneys was present during Cooper's penalty phase closing argument when Cooper's counsel reiterated these claims against Johnson. Johnson's counsel immediately objected to this closing argument, renewed Johnson's motion for severance, and requested access to the record to review the evidence presented in Johnson's absence. The trial court denied all of these motions. Under these circumstances, we agree with Johnson that Cooper's presentation of mitigating evidence and witnesses constituted a critical stage of Johnson's penalty phase proceeding.
While a capital defendant is free to waive his or her presence at a crucial stage of the trial, the waiver must be knowing, intelligent, and voluntary. See *28 Amazon v. State, 487 So.2d 8, 11 (Fla. 1986). An on-the-record waiver by the defendant is necessary for "those rights which go to the very heart of the adjudicatory process such as the right to a lawyer, the right to a jury trial, or the right to be present at a critical stage in the proceeding." Mack v. State, 537 So.2d 109, 110 (Fla.1989) (Grimes, J., concurring) (citations omitted) (emphasis added); see also Francis v. State, 413 So.2d 1175, 1178 (Fla. 1982) (finding that record did not affirmatively demonstrate that defendant made a knowing and intelligent waiver of his right to be present during critical stage of exercising peremptory challenges to prospective jurors or that he acquiesced or ratified the action taken by his counsel during his absence).
In the instant case, there is no record evidence of any inquiry into Johnson's understanding of his right to be present during Cooper's presentation of mitigating evidence. In fact, in a sidebar conference the court made the following concession of error as to the process employed here:
I made a mistake in this case. I should have had the sentencing together, everybody present at the same time, all of the facts brought out, let them deliberate rate [sic] at the same time. This type of procedure, which everybody agreed to and everybody wanted, that we held separate sentencing hearings, is just, I think, illegally and morally wrong. But that's where we are and that's where we are going to continue.
The court chose to remedy the "error" by not publishing the jury's verdict as to Cooper's sentence until the jury completed its deliberations as to Johnson's sentence. In response, Johnson's counsel moved for mistrial and asked the court to impanel a new jury to deliberate on Johnson's sentence. The court denied the motion for a mistrial and proceeded with Johnson's penalty phase. Johnson then presented his mitigating evidence to the same jury that had already heard Cooper's mitigating evidence and closing argument. Under these circumstances, we find that Johnson's absence without a knowing waiver constituted error.
In situations involving violations of rule 3.180, "it is the constitutional question of whether fundamental fairness has been thwarted which determines whether the error is reversible." Pomeranz v. State, 703 So.2d 465, 471 (Fla.1997) (quoting Garcia v. State, 492 So.2d 360, 364 (Fla.1986)). We agree with trial counsel that Johnson was prejudiced by his inability "to rebut the improper comments of [Cooper's counsel]" and that the tactics employed by Cooper's attorney "essentially creat[ed] two prosecutors against Mr. Johnson." Thus, we find Johnson's absence requires a new penalty phase proceeding before a new jury.[5]
Finally, we find that the court erred in imposing consecutive three-year minimum mandatory sentences for the armed burglary and armed robbery which occurred as part of a single criminal episode. Where several offenses are committed in a single criminal episode involving a single victim, consecutive minimum mandatory sentences for the possession of a firearm may not be imposed. See Palmer v. State, 438 So.2d 1, 3 (Fla.1983) (finding that imposition of thirteen consecutive three-year minimum mandatory sentences for each of Palmer's thirteen robbery convictions constituted reversible error where the robbery convictions arose from a single criminal transaction). Thus, we hereby vacate Johnson's minimum mandatory sentences. On remand, the trial court is directed that the three-year minimum mandatory sentences must run concurrently. See id. at 4.
For the reasons expressed above, we affirm Johnson's convictions, but vacate his death sentence and remand for a new penalty phase proceeding before a new jury.
It is so ordered.
*29 HARDING, C.J., SHAW and WELLS, JJ., and OVERTON, Senior Justice, concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] The prosecutor asked Blount if either defendant used "a certain expression as to what would happen to the man that led you to believe that they [were] talking about killing the guy." Blount replied that Cooper stated that "they were going to splat him." Blount further testified that Cooper and Johnson discussed a plan for Cooper to hold the pawnshop owner while Johnson shot him.
[2] Cooper's direct appeal was recently considered by this Court. See Cooper v. State, 739 So.2d 82 (Fla.1999), in which we affirmed Cooper's convictions, vacated his death sentence, and remanded for imposition of a life sentence without possibility of parole for twenty-five years..
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] Johnson raised an identical claim in the appeal of his other conviction for first-degree murder. The Third District Court of Appeal found "no deficiency in the standard Miranda rights form utilized by the Metro-Dade Police Department." Cooper v. State, 638 So.2d 200, 201 (Fla. 3d DCA 1994). Johnson also raised this issue in a federal habeas corpus petition, and the district court denied his petition. See Johnson v. Singletary, No. 95-2646-CIV-UNGARO-BENAGES (S.D. Fla. June 25, 1996), aff'd, 162 F.3d 97 (11th Cir.1998), cert. denied, ___ U.S. ___, 119 S.Ct. 1367, 143 L.Ed.2d 527 (1999).
[5] Our disposition of this issue renders moot Johnson's remaining penalty phase issues.