# Supreme Court of Florida

_____

No. SC18-655
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**JOHN PACCHIANA,**
Respondent.

January 9, 2020

CANADY, C.J.

This case is before the Court for review of the decision of the Fourth District Court of Appeal in *Pacchiana v. State*, 240 So. 3d 803 (Fla. 4th DCA 2018), which held that a peremptory strike was constitutionally impermissible because it was based on the prospective juror's religion. The Fourth District's decision was based in part on its conclusion that the peremptory strike involved an unconstitutional religious test. *See* art. VI, cl. 3, U.S. Const. ("[N]o religious Test shall ever be required as a Qualification to any Office or public Trust under the United States."); *see also* art. I, § 2, Fla. Const. ("Basic rights.— . . . No person shall be deprived of any right because of race, religion, national origin, or physical disability."); art I,

§ 3, Fla. Const. ("Religious freedom.—There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof.").[1] Because in reaching this conclusion the district court expressly construed provisions of the United States and Florida Constitutions, we have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.

But we do not decide the issue of the constitutionality of a religion-based strike. Instead, we conclude that the issue was not properly preserved in the trial court and that the district court erred in reversing on the basis of an unpreserved argument. We therefore quash the decision of the district court in *Pacchiana* and remand for further proceedings in accordance with this opinion.

## I. BACKGROUND

John Pacchiana and his codefendants, Michael and Christin Bilotti, were charged with first-degree murder and conspiracy to commit first-degree murder. After a joint trial, the jury found Pacchiana guilty as charged, and he was sentenced to life imprisonment. On appeal to the Fourth District, Pacchiana argued that the trial court erred in allowing a peremptory strike of a prospective juror. This prospective juror was both black and a Jehovah's Witness.

---

1. The court's decision on this point is reflected in Judge Levine's opinion for the court, *Pacchiana*, 240 So. 3d at 815-16, together with Judge Gerber's separate opinion concurring in pertinent part, *id.* at 817, 820 (Gerber, C.J., specially concurring in part and dissenting in part).

During jury selection, the State used a peremptory challenge to strike the prospective juror.  The following then transpired:

> [DEFENSE COUNSEL]: *Can we get a race neutral reason?*  (Emphasis supplied.)
>
> [THE STATE]: She's a Jehovah Witness.  I've never had one say, and I highlighted it, they've always said they can't sit in judgment.  She never brought it up.
>
> [DEFENSE COUNSEL]: She did.
>
> [THE STATE]: No, but she put at the bottom that she's a Jehovah Witness, that gives me pause.
>
> [DEFENSE COUNSEL FOR CODEFENDANT]: *That's a religious based strike.*  (Emphasis supplied.)
>
> [THE STATE]: You can say that but that's—for 20 years, [defense counsel for codefendant] knows, any one of them that's been practicing they've always said that. Now maybe she's less—
>
> [DEFENSE COUNSEL FOR CODEFENDANT]: She reads Jehovah stuff, she doesn't say she's a practicing Jehovah Witness.
>
> THE COURT: Let's bring in [the prospective juror].
>
>  . . . .
>
> [Prospective juror], if you wouldn't mind having a seat in the front row, we have a question I want to ask you.  You indicated in your questionnaire that you're a Witness, Jehovah Witness.
>
> [PROSPECTIVE JUROR]: Yes.
>
> THE COURT: How would that affect your ability to be fair in this case?  We've had them before.  Do you have any religious beliefs that would prevent you from being fair and impartial in this case?

[PROSPECTIVE JUROR]: If the evidence that's provided to me is clear cut and concise I would be able to. If my ruling wouldn't—

THE COURT: In light of my questions, [prosecutor]?

[THE STATE]: So there's no prohibition, and honestly I don't know enough about religion, and I don't mean that disrespectfully, but I want to make sure that you as an individual, whatever your beliefs are, there's nothing preventing you from sitting in judgment of a case, because that's really what you're doing, you're judging whether we've proven our case or not. You can do that?

[PROSPECTIVE JUROR]: I can, and before I believe it was Judge Levenson who said that we would not be making the sentencing.

THE COURT: How do you feel about that?

[PROSPECTIVE JUROR]: I'm okay with that.

THE COURT: Okay.

[THE STATE]: The fact that you said that, if you were involved—I'm taking it to mean, and maybe I'm wrong, if you're involved in sentencing then you are saying you wouldn't be sitting?

[PROSPECTIVE JUROR]: Then I would say no.

[THE STATE]: You realize your decision here if, in fact, you're to vote—

[DEFENSE COUNSEL FOR CODEFENDANT]: I object to any further questions with this juror.

THE COURT: Overruled.

[THE STATE]: If, in fact, you know, you vote that it's proven, you have nothing to do with sentencing but the Judge would based on your decision saying it's proven.

[PROSPECTIVE JUROR]: If the State gives me all the evidence that I can see where you can show me that these individuals did this act, then I—can make a decision on that and based on the decision that you provide me.

[THE STATE]: Well, we don't provide you with a decision.

[PROSPECTIVE JUROR]: Well, the evidence that I'm given.

[THE STATE]: Yes, ma'am. You said all the evidence. You can do that beyond a reasonable doubt?

[PROSPECTIVE JUROR]: Yes.

[THE STATE]: The reason. I'm asking, I want to make sure—whatever the Judge says the law is—

[PROSPECTIVE JUROR]: Right.

[THE STATE]: Okay.

THE COURT: Any questions from the Defense?

[DEFENSE COUNSEL FOR CODEFENDANT]: None.

 . . . .

THE COURT: Thank you, ma'am. Record reflect that the juror's [sic] have left the courtroom and the door is closed. What say you, [prosecutor]?

[THE STATE]: My reason is unchanged, I don't believe I can meet her burden. I can meet my burden beyond a reasonable doubt but I cannot meet her burden and that's a concern to me and it has nothing to do with religion or anything else.

THE COURT: Let me hear from the Defense.

- 5 -

[DEFENSE COUNSEL]: We object to her being challenged for cause, then *he's going to have to come up with a race neutral reason.* (Emphasis supplied.)

[THE STATE]: This is a peremptory.

THE COURT: Over the Defense objection I find that the record sufficiently supports a race neutral reason because of the concern about her responses to the questions. So over your objection it'll be granted.

After the trial court permitted the State to use a peremptory challenge to strike the prospective juror, Pacchiana and his codefendants made a joint motion to strike the jury panel based on their belief that the court was depriving them of a juror they thought should be seated.

Five days after the prospective juror was excused but before the jury was sworn, Pacchiana filed a written motion for mistrial and to select a new jury.[2] At the hearing on the motion, the State argued that the motion was untimely, pointing out that Pacchiana was now attempting to make a separate religion-based objection to the use of the strike in addition to his previous race-based objection. The trial court noted that Pacchiana was seeking to extend *Batson v. Kentucky*, 476 U.S. 79 (1986)—in which the United States Supreme Court held that the Equal Protection Clause prohibits race-based peremptory challenges—to religion. The trial court declined the invitation to extend *Batson* to religion, maintained its earlier ruling

---

2. The trial court stated at the subsequent hearing that the proper motion to file would have been a motion to strike the jurors rather than a motion for mistrial, because the jury had not yet been sworn.

- 6 -

that the strike was permissible, and stated that all of Pacchiana's objections were "duly noted and preserved at this time."

On appeal, the Fourth District concluded that the trial court erred in allowing the peremptory strike of the prospective juror. The district court extended *Batson* to peremptory challenges based on religion, stating that "Even if the state's strike were 'genuinely' based on the juror's religion, members of a religion that is a cognizable class are also protected under the United States and Florida Constitutions from being systematically struck from juries solely based on their faith." *Pacchiana*, 240 So. 3d at 813.

On review, the State asks this Court to quash the Fourth District's decision on three grounds: (1) Pacchiana's religion-based objection to the strike was not properly preserved; (2) the Fourth District improperly extended *Batson* to religion; and (3) the Fourth District erroneously concluded that challenging a prospective juror based upon religious beliefs is an improper religious test which violates the United States Constitution. Because we agree that Pacchiana's religion-based objection to the strike was not properly preserved, we quash the decision below and decline to address the other arguments.

## II. ANALYSIS

The State argues that Pacchiana failed to properly preserve his religion-based objection to the State's peremptory strike and that the Fourth District erred

- 7 -

in reversing for a new trial on that unpreserved ground.  When Pacchiana initially objected to the peremptory strike of the prospective juror, he asked the State to provide a race-neutral reason for the strike.  When the initial objection was made, the following exchange occurred:

> [DEFENSE COUNSEL]: Can we get a race neutral reason?
>
> [THE STATE]: She's a Jehovah Witness.  I've never had one say, and I highlighted it, they've always said they can't sit in judgment.  She never brought it up.
>
> [DEFENSE COUNSEL]: She did.
>
> [THE STATE]: No, but she put at the bottom that she's a Jehovah Witness, that gives me pause.
>
> [DEFENSE COUNSEL FOR CO-DEFENDANT]: That's a religious based strike.

*Pacchiana*, 240 So. 3d at 806.  The trial court then called the prospective juror back into the courtroom and asked her if her religion would prevent her from being impartial, and her response was, "If the evidence that's provided to me is clear cut and concise I would be able to."  *Id.*  After that questioning of the prospective juror, the State again defended its strike, saying, "My reason is unchanged, I don't believe I can meet her burden.  I can meet my burden beyond a reasonable doubt but I cannot meet her burden and that's a concern to me and it has nothing to do with religion or anything else."  *Id.*  After the State explained its reason for striking the prospective juror, Pacchiana's only further argument regarding the State's

reason was, "We object to her being challenged for cause, then he's going to have to come up with a race neutral reason." *Id.* at 807.

Our law regarding objections to peremptory strikes that are based on constitutionally impermissible grounds requires both a contemporaneous objection to the strike and the renewal of that objection before the jury is sworn. *See Johnson v. State*, 750 So. 2d 22, 26 (Fla. 1999); *Melbourne v. State*, 679 So. 2d 759, 764 (Fla. 1996). The State is correct that Pacchiana failed to properly preserve his religion-based objection to the State's peremptory strike. Here, Pacchiana's contemporaneous objection to the strike was predicated on the venireperson's race. Pacchiana only requested a race-neutral reason for the State's strike of the prospective juror. The issue that was raised on appeal to the Fourth District—that the venireperson was improperly struck based on her religion—was not preserved.

In *Harper v. State*, 549 So. 2d 1121, 1122 (Fla. 1st DCA 1989), Harper argued that the State violated his right to an impartial jury by using peremptory challenges to systematically exclude women from the jury. The First District concluded that the issue was unpreserved because Harper only objected to the State's exercise of the challenge on the basis of race and did not articulate an objection that the State was exercising its peremptory challenges to unconstitutionally exclude women from the jury. 549 So. 2d at 1122. Similarly

here, at the time the strike was exercised, Pacchiana did not articulate an objection that the State was exercising its peremptory challenge to unconstitutionally exclude Jehovah's Witnesses from the jury.  Thus, no objection to the strike as being a constitutionally impermissible religion-based strike was contemporaneously preserved in the trial court.  Counsel's comment, "[t]hat's a religious based strike" was not itself a clear and specific legal objection to the constitutionality of the strike based on religion—especially because neither this Court nor the United States Supreme Court has extended *Batson* to religion.

The first time that Pacchiana clearly articulated his position that the State's strike of the prospective juror based on her being a Jehovah's Witness was a violation of the Equal Protection Clause and should be subject to the protections of *Batson* was in his written motion for mistrial and to select a new jury, filed five days after the prospective juror was excused, in which he "assert[ed] that *Batson* and *Melbourne* apply to peremptory challenges based upon religion."  But by that time, the religion-based objection was untimely.

As we have stated, "it is the objection/re-objection process . . . that is the decisive element in a juror-objection-preservation analysis."  *Matarranz v. State*, 133 So. 3d 473, 482 (Fla. 2013).  Here, although Pacchiana attempted a "re-objection" before the jury was sworn, there was no clear initial contemporaneous objection that the strike was an improper religion-based strike.  Pacchiana

- 10 -

therefore failed to properly preserve his religion-based objection to the strike by making a sufficient objection on religious grounds at the time the strike was exercised. The Fourth District erred in relying on that issue to order a new trial.

### III. CONCLUSION

Because the objection to the strike was not properly preserved, it cannot provide the basis for a reversal and remand for a new trial. We therefore quash the decision below and remand to the Fourth District for further proceedings consistent with this opinion.

It is so ordered.

POLSTON, LAWSON, and MUÑIZ, JJ., concur.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

Because the defense's religion-based objection to the peremptory strike of the juror was preserved, I dissent. The general purpose of requiring a contemporaneous objection is to place the trial court on notice of a possible error and give the court the opportunity to correct it. *Harrell v. State*, 894 So. 2d 935, 940 (Fla. 2005). Strict, formalistic terminology is not necessary to accomplish this goal, and we have held that "magic words" are not required to preserve an objection. *See, e.g.*, *Aills v. Boemi*, 29 So. 3d 1105, 1109 (Fla. 2010) ("While no

- 11 -

magic words are required to make a proper objection . . . the concern articulated in the objection must be sufficiently specific to inform the court of the perceived error."); *Murray v. State*, 3 So. 3d 1108, 1117 (Fla. 2009) (same); *Williams v. State*, 414 So. 2d 509, 512 (Fla. 1982) ("[M]agic words are not needed to make a proper objection").[3] This is a commonsense rule because attorneys are not robots and should not be expected to follow a rote script while in the courtroom. To require exact language is contrary to the purpose of preservation and operates to the detriment of a client, regardless of whether that client is a private party, the State, or an accused.

Applying these principles to the present case, the objection to the peremptory strike of the juror based upon her religion was preserved. When

---

3. *See also State v. Johnson*, 990 So. 2d 1115, 1116 (Fla. 3d DCA 2008) ("[N]o 'magic words' are needed to make a proper objection. If an attorney's articulated concern informs the court of the alleged error, then the issue is properly preserved for appeal." (citation omitted)); *Conner v. State*, 987 So. 2d 130, 133-34 (Fla. 2d DCA 2008) ("Here, while defense counsel did not use the magic word 'relevant' in his objection, the substance of his initial argument was that the photograph served no purpose, i.e., was not relevant, except to inflame the jurors' emotions. When the State argued that the photograph showed the bicyclist's 'point of final rest,' defense counsel responded that '[t]hat's not the final rest of the body' and, further, that the only issue was where the impact occurred. Those assertions directly disputed the State's claim that the photograph was relevant. In light of those arguments, we believe that Conner's objection was sufficiently precise to apprise the trial court of the basis of his relevance objection, and thus the issue was preserved for review.").

defense counsel asked for a race-neutral reason for striking the juror, the State's

response was:

> STATE: She's a Jehovah['s] Witness. I've never had one say, and I
> highlighted it, they've always said they can't sit in judgment. She
> never brought it up.
> COUNSEL FOR PACCHIANA: She did.
> STATE: No, but she put at the bottom that she's a Jehovah['s]
> Witness, that gives me pause.

Thus, the State's initial explanation for striking this juror was based exclusively

upon her religion. Immediately thereafter, counsel for Pacchiana's codefendant

stated, "That's a religious based strike." Although co-counsel could have been

more precise in his wording, it is evident this was an objection to striking the juror

based upon her religion.[4]

In ruling on the objection, the court specifically referenced the juror's

religion:

> Listen, she's a Jehovah['s] Witness, I think there was some discussion
> about her and the issue of the sentencing part of it, she did waiver
> [sic] along the way there.
> Look, if it were me making a decision, me perceiving it
> differently, but out of deference to the person who is the moving
> party, as long as there's some reason, or suggestion based upon her

---

4. Importantly, it was only after this exchange, and following voir dire of the juror, that the State altered its basis for striking her, contending it could not meet her burden of proof, and this "has nothing to do with religion or anything else." It is true the juror at one point stated she could be fair and impartial "[i]f the evidence that's provided to me is clear cut and concise"; however, the juror is a layperson, not versed in legal terminology. Once informed as to the proper burden of proof, she expressly agreed she could apply it in reaching a decision.

responses and overall nature of her—and plus I think alternatively, additionally I want to point out I know it's a blind record but there's a number of other African Americans on the jury, I think that based on the totality of the circumstances I think it rises to the legal [sic] of a non based reason.  I understand your point though, it is well taken.

[R. 2332]  Further, in ruling on a motion that was filed after the juror was struck and before the jury was sworn, the court again returned to the juror's status as a Jehovah's Witness:

> Jehovah['s] Witnesses are peculiar, and many of them in my experience have said they cannot judge, that God judges, and based on that I find that to be a genuine non-race-based reason. . . .  So, the fact that she says, the juror says, that she's a Jehovah['s] Witness, notwithstanding the fact that she says she can still be fair and impartial, he says, "You know what, I don't feel comfortable with the fact that she has that religion."
> . . . .
> A Jehovah['s] Witness, that as a religion, it would almost be malpractice for a prosecutor to let someone on the jury like that.

Finally, the following dialogue occurred between the court and defense counsel:

> COURT:  . . . I think you concede . . . this is a first impression type issue.
> COUNSEL FOR PACCHIANA:  Right.
> COURT:  You want to extend *Batson* [*v. Kentucky*, 476 U.S. 79 (1986)], which the Supreme Court has not done.
> COUNSEL FOR PACCHIANA:  Absolutely.
> COURT:  I'm going to exercise my discretion and deny that request. However, all of your objections are duly noted and preserved at this time.

These statements demonstrate the objection to striking the juror based upon her religion was sufficiently raised, and the underlying purpose of preservation achieved.  *See Harrell*, 894 So. 2d at 940.  In effect, although the defense initially

- 14 -

objected to the striking of the juror based upon her race, the State's response—that she was a Jehovah's Witness—caused the defense's challenge to evolve into one based upon religion.

The guidelines for exercising peremptory challenges delineated in *Melbourne v. State*, 679 So. 2d 759, 764 (Fla. 1996), were also followed. Counsel for Pacchiana's codefendant objected to the striking of the juror based upon her religion, even if he did not use the formal expression, "I object" before noting, "That's a religious based strike." This satisfies step one of the *Melbourne* procedure. Then, the State asserted two bases for the strike (the second step of the *Melbourne* procedure)—initially, that Jehovah's Witnesses have "always" said they cannot sit in judgment and, later, that the State could not meet the juror's burden of proof. Finally, the court ruled upon the strike, stating in relevant part, "She's a Jehovah['s] Witness" and later, "as a religion, it would almost be malpractice for a prosecutor to let someone on the jury like that." This is the final component of *Melbourne*.

This case presents an important issue in Florida law as to whether religion can be considered as a basis for a peremptory strike.[5] The majority wrongfully

---

5. *See Flowers v. Mississippi*, 139 S. Ct. 2228, 2238 (2019) ("Other than voting, serving on a jury is the most substantial opportunity that most citizens have to participate in the democratic process.").

insulates it from review by using an overly formalistic interpretation of preservation.  I dissent.

Application for Review of the Decision of the District Court of Appeal – Constitutional Construction/Direct Conflict of Decisions

      Fourth District - Case No. 4D15-3340

      (Broward County)

Ashley Moody, Attorney General, Tallahassee, Florida, and Melanie Dale Surber, Senior Assistant Attorney General, West Palm Beach, Florida,

      for Petitioner

Fred Haddad of Fred Haddad, P.A., Fort Lauderdale, Florida,

      for Respondent